## 29730. KAPLAN v. EDMONDSON.

152

*C. J. Taylor,* for plaintiff. *H. B. Edwards,* for defendant.

SUTTON, J. Mrs. Bettie Kaplan brought suit against G. A. Edmondson, alleging in substance that on December 12, 1940, while the defendant was at her home attempting to repossess certain household furniture which she had purchased from him, and while she was resisting his efforts to remove the goods from her home, the defendant, in the presence and hearing of his collector, one Mr. Pittman, and her two small children, said to her, "You damned old bitch, you, I'm going to take my stuff, and I will beat you with my cane before I get out of here;" meaning by the use of the word "bitch" that she was a whore and a common prostitute, guilty of the offense of fornication and adultery, a criminal offense under the laws of Georgia, and by the use of the said epithet meant that she was guilty of debasing acts which of their nature may exclude her from society, and that the said charge was false and was maliciously made by the defendant, damaging her good name and reputation, and judgment was prayed in the sum of $500. The defendant filed a demurrer, general and special, which was overruled by the court, and no exception was taken. He also filed an answer denying the substantial allegations of the petition.

Upon the trial of the case the evidence showed that, as alleged in the petition, the defendant and his collector went to the home of the plaintiff, and the defendant was in the act of removing therefrom certain furniture which she had purchased from him under a written contract, and that upon her being called into the house by her young daughter and while actively resisting the attempted repossession by the defendant he, according to her testimony, in the presence of his collector, Pittman, and her eight-year-old daughter, said to her in a loud voice, "You damned bitch. I'll hit you with my cane." She further testified that she did not know the meaning of the word "bitch;" that she did not

work for a living; that her business was that of a housewife, doing cooking, dishwashing and common house work while living with her husband; and that what the defendant called her did not cause any loss or damage in her work. D. A. Pittman, the defendant's collector at the time of the occurrence, testified that he was present when the defendant sought to remove the furniture, and that the defendant drew back his walking cane and said to the plaintiff, "You damned old bitch. I'll knock your brains out," and that the witness did not know "the definition of the word 'bitch.'" On cross-examination he testified that the defendant "did not say anything about her character." Phil Kaplan, husband of the plaintiff, testified that he knew "the definition of the word 'bitch' as applied to a woman. It means just a common whore."

The defendant offered no evidence, and after some argument by counsel the court directed a verdict in favor of the defendant. The plaintiff filed a motion for new trial on the general grounds, and on several special grounds, and the exception is to the judgment overruling the motion.

One ground of the motion for new trial complains that the court erred in refusing to allow one of the hearers of the defendant's characterization of the plaintiff as a "damned bitch" to testify as to "the usual meaning and understanding of the expression as applied to a woman," the plaintiff's counsel having insisted to the court that if the witness were permitted to answer he would testify that it "means such a woman is a common whore." The petition alleged that in the circumstances detailed the defendant called the plaintiff a "damned bitch" and by innuendo charged that thereby he meant that she was a whore and a common prostitute, guilty of the offense of fornication and adultery, a criminal offense under the laws of Georgia, and by the use of the said epithet meant that she was guilty of debasing acts which of their nature may exclude her from society. The Code, § 105-702, provides: "Slander, or oral defamation, consists, first, *in imputing to another a crime punishable by law;* or, second, charging him with having some contagious disorder, or *being guilty of some debasing act which may exclude him from society;* or, third, in charges made against another in reference to his trade, office, or profession, calculated to injure him there-

in; or, fourth, any disparaging words productive of special damage flowing naturally therefrom. In the last case, the special damage is essential to support the action; in the first three, damage is inferred." (Italics ours.) The plaintiff contends that the present action is maintainable under either of the two provisions italicized above, and by the ruling on the defendant's general demurrer, which was not excepted to, it has been adjudicated that a cause of action was set forth in the petition, it being contended that if the plaintiff proved that the defendant, in the circumstances related, spoke of and concerning the plaintiff the alleged defamatory words, and the jury should believe that they were used by the defendant with the meaning ascribed to them by the innuendo, the jury would be authorized to return a verdict for the plaintiff for general damages, no special damage having been alleged and there being no necessity for such allegation and proof where words imputing a crime, being slanderous per se, are used.

In presenting to the jury's consideration the meaning in which it was alleged the words "damned bitch" were used, the plaintiff had the right to show by any bystander who heard the defamatory words whether or not they were understood in the sense ascribed to them by the innuendo. The record shows that one Pittman, who was present and heard the defendant use such language to and of the plaintiff, testified that he "did not know the definition of the word 'bitch,'" and on cross-examination he testified that the defendant "did not say anything about her character." It appears from the ground of the motion under consideration, certified by the trial judge as being true in its recitals, that the effort to show by the witness "the usual meaning and understanding of the expression 'damned bitch'" was made after the witness had testified as to the use of the defamatory words to the plaintiff, and that the court limited the witness, in respect to answering counsel's question as propounded, to testifying as to "the definition of the word 'bitch'." The gist of the action of slander is the unfavorable impression created in the mind of a third party by an alleged tort-feasor in using defamatory words of and concerning another in the hearing of such third party. Where a word is reasonably susceptible of two meanings, one of which is innocent and the other defamatory, the plaintiff may

allege by innuendo the meaning in which it was used, and it is for the jury to say whether or not the word as used was slanderous.

As was said in *Park* v. *Piedmont & Arlington Life Insurance Co.,* 51 *Ga.* 510: "If the plain, unambiguous words contained in the publication do not impute a criminal offense, the meaning thereof can not be enlarged or extended by an innuendo for that purpose; but when the language used is capable of being understood in a double sense, the one criminal and the other innocent, the plaintiff, by making the proper allegations in his declaration, may, by an innuendo, aver the meaning with which he thinks it was published, and the jury may find whether the publication was made with that meaning or not." In *Williams* v. *Equitable Credit Co.,* 33 *Ga. App.* 441 (126 S. E. 855), it was said: "Words that do not in themselves unequivocally convey a charge which may become libelous when falsely and maliciously published may nevertheless convey such a charge when the words are capable of being so understood and are so understood by the person [the third party] to whom they are uttered. Words apparently innocent may convey such a charge when they are considered in connection with the innuendo and the circumstances surrounding their publication." In Odgers on Libel and Slander (5th ed.) 116 it is stated: "If the words are incapable of the meaning ascribed to them by the innuendo and are prima facie not actionable, the trial judge will stop the case. If, however, the words are capable of the meaning ascribed to them, however improbable it may appear that such was the meaning conveyed, it must be left to the jury to say whether or not they were in fact so understood."

The court determined that the words alleged to have been used by the defendant were susceptible to the meaning ascribed by the innuendo. That ruling on the demurrer became the law of the case. It remained for the jury to determine from any evidence introduced upon the trial whether or not the words ascribed by the innuendo as charging the plaintiff with a crime were in fact so understood by any one who heard them. We think that under the authorities above quoted the plaintiff had the right to show by the witness Pittman, not merely the "definition" of the words "damned bitch," as ruled by the judge, but what he knew to be the usual meaning and understanding of the expression,

156

and that the judge erred in not permitting the witness to so testify. Nor was the error rendered harmless by the fact that the witness testified that he did not know the "definition" of the words. A person may not know the definition of a word and yet may know its meaning as employed in common use. For example, he might state that he does not know the *definition* of the word "speedometer" and still testify that he knows from common use and understanding that it designates an instrument which is employed for measuring the speed and distance traveled by an automobile. Accordingly, we hold that the proffered testimony should have been admitted, and that it should have been left to the jury to determine, with his other testimony in evidence, that is, that the defendant "did not say anything about her character," whether or not the defendant used the words with the meaning ascribed to them by the innuendo and whether or not they were so understood by the witness.

Another ground of the motion for new trial complains that the court erred in admitting in evidence testimony of the plaintiff on cross-examination, over objection of counsel for the plaintiff, that what the defendant called her did not cause her any loss of time or damage in her work as a housewife. The case being predicated on the use of words actionable per se, it was not necessary to allege or prove special damage if such words were used with the meaning ascribed by the innuendo, and such evidence was incompetent and inadmissible. *Atlanta Post Co.* v. *McHenry*, 26 *Ga. App.* 341 (4) (106 S. E. 324).

One ground of the motion for new trial complains that the court erred in refusing to allow the plaintiff to testify that she understood the meaning of the words "damned bitch" to be a common prostitute, and another ground complains that the court erred in not permitting the plaintiff to testify that the usual meaning and understanding of the words as applied to a woman are that she is a common prostitute. In order to support an action for slander it is absolutely essential that the alleged defamatory words be published, that is, used in the hearing of some person other than the one defamed. Consequently, the testimony of the plaintiff as to her understanding of the meaning of the words used and as to the usual meaning and understanding of the words

would be without probative value, and the court did not err in rejecting such testimony.

In view of the above rulings it is unnecessary to pass upon the general grounds of the motion for new trial or the special ground of the motion assigning error on the direction of the verdict against the plaintiff.

*Judgment reversed. Felton, J., concurs.*

STEPHENS, P. J., concurring specially. I concur in the judgment of reversal and in all the conclusions on all the grounds stated in the majority opinion, but I dissent from the ruling that the court did not err in excluding the testimony of the plaintiff herself as to her understanding of the meaning of the words which the defendant applied to her. It is not necessary for the evidence to expressly show that any person other than the plaintiff who heard the words applied to the plaintiff, understood them in the sense of the meaning attached thereto in the innuendo. It can be established by the testimony, not only of the plaintiff herself, but by any other witness that one of the meanings attached to the words applied to the plaintiff is such as is alleged in the innuendo, as in this case that the plaintiff was a common prostitute, etc. It is then a question for the jury to determine whether or not the sense in which the words were used and understood was in the sense alleged in the innuendo. As stated in Newell on Slander and Libel, 4 ed. 589: "If the words are capable of the meaning ascribed to them however improper it may appear that such was the meaning conveyed it is properly the province of the jury to say whether they were in fact so understood."