## 18675. GARLAND· v. THE STATE.

ARGUED SEPTEMBER 13, 1954—DECIDED OCTOBER 11, 1954.

*Wesley R. Asinof, W. E. Watkins, M. T. Hartman, Alfred D. Fears, S. B. Wallace,* for plaintiff in error.

*Hugh Sosebee, Solicitor-General, Harvey J. Kennedy, Solicitor Pro Tem.,* contra.

ALMAND, Justice. Benjamin B. Garland was indicted for the offense of criminal libel. General and special demurrers to the indictment were overruled, and he filed a writ of error to the Court of Appeals. That court transmitted the bill of exceptions and record to this court because the case was one involving the constitutionality of a statute and falling within the jurisdiction of the Supreme Court.

The indictment charged that, on February 6, 1953, the defendant did maliciously print and publish and cause to be printed a certain false, scandalous, and defamatory libel in a newspaper published in the City of Macon and circulated in Monroe County, the Macon Telegraph, which blackened the character, honesty, virtue, integrity, and reputation of Honorable Frank B. Willingham, who was then Judge of the Superior Courts of the Flint Judicial Circuit. The news article as set forth in the indictment was as follows:

"Garland blasted the entire investigation from his Jackson home and stated 'I did not get elected to resign, and I'm not going to resign or even consider resigning.' He added that 'someone is attacking me, and I know who is masterminding this attack.' The solicitor was asked to name the person in question, but he replied 'I can't do that for I would be held in contempt of court.' Garland lambasted the jury probe by saying that 'the investigation, and its intent, shows the state of feeling of the people in Monroe County, which has continued since the time of William Bell's death. The attack they (the jury) make on me clearly shows their state of feeling, which I have contended all along.' He followed this up by opining that 'I'd hate to be tried for anything in Monroe County right now. If I was on trial I surely would request a change of venue and a change of judge.' "

By innuendo, the indictment states that in the article which referred to someone who was masterminding the attack, and the statement by Garland that, if he named the person, he would be held in contempt of court, and that, if he was on trial in a criminal case in Monroe Superior Court, he would request a change of venue and a change of judge, he was referring to Judge Willingham.

The special demurrers, other than grounds 7 and 8, merely amplified the general grounds of the demurrer.

Whether the charge made by the defendant was indictable as being a criminal libel, is dependent upon the question of whether or not the words used are defamatory. . If as a matter of law it can be said that the publication is incapable of any construction other than that the words are not defamatory, then the indictment is subject to general demurrer. State v. Darwin, 63 Wash. 303 (115 Pac. 309). Though a defamatory charge may be made in indirect terms or by insinuation, the publication must be construed as a whole, and the words charged as being defamatory are to be taken in their plain, natural, and ordinary meaning, to be understood by the court as other people would understand them, according to the sense in which they appear to have been published and the idea they were meant to convey. The court will not hunt for a strained construction in order to hold the words used as being defamatory. We are confined to the meaning of the words as actually used, and not to a construction placed thereon by the State in its innuendo in the indictment. Diener v. Star-Chronicle Pub. Co., 230 Mo. 613 (132 S. W. 1143 (5)). The purpose of innuendo is to explain ambiguities in the charge made in the statement, and it cannot introduce any new matter. *Central of Ga. Ry. Co.* v. *Sheftall,* 118 *Ga.* 865 (1) (45 S. E. 687).

Where the words can bear but one meaning, and that is that they are obviously not defamatory, the office of innuendo cannot make the words defamatory. Australian Newspaper Co. v. Bennett, 1894 A. C. 284. The intent and meaning of the alleged defamatory statement must be gathered not only from the words singled out as being libelous, but from all parts of the publication, in order to show its meaning. Times Pub. Co. v. Ray (Tex. Civ.) 1 S. W. 2d 471; Bathrick v. Detroit Post & Tribune Co., 50 Mich. 629 (16 N. W. 172). Where the words of an alleged defamatory statement are so vague and uncertain that they could not have been intended to refer to any particular person, they are not actionable, and cannot be made so by any amount of proof. Newton v. Grubbs, 155 Ky. 479 (159 S. W. 994).

The indictment by innuendo charged that the quoted words of the defendant in the newspaper publication, that "Someone is attacking me, and I know who is masterminding this attack," but he would not name the person because, if he did, "I would

be held in contempt of court," and that "I'd hate to be tried for anything in Monroe County right now. If I was on trial I surely would request a change of venue and a change of judge," had reference to Judge Frank B. Willingham, Judge of the Superior Court of Monroe County, and were false, malicious, scandalous, and defamatory.

Conceding that these words do refer to Judge Willingham, they do not charge him with any want of intergrity or lack of judicial character, or misconduct in office. Taking the statements together as amplified by the innuendo, they simply state that the defendant was being investigated by the Monroe County grand jury as to the circumstances of the commutation of the death sentence imposed upon William Ogletree by a jury in Monroe Superior Court to life imprisonment by the State Board of Pardons and Paroles, and the request of the grand jury that the defendant, who prosecuted the case, resign as solicitor-general, and that this proceeding was "masterminded" (inspired, led, or directed) by Judge Willingham; and that due to the state of feeling in Monroe County he, the defendant, would "hate" to be on trial as a defendant in a criminal case in Monroe Superior Court; and that, if he was, he would request a change of venue and another judge to try him—none of these statements reflects on the personal or judicial character of Judge Willingham, and is not defamatory in character. It is the duty of the judge of the superior court to instruct and direct a grand jury as to matters coming within the scope of their investigating power, and to state that the judge has instituted or directed a particular investigation in no wise defames the judge. The defendant, in stating that, if he named the person "masterminding the attack," he would be held in contempt of court, did not charge Judge Willingham with bias or prejudice, or that the defendant would be held in contempt without legal evidence or justification. The fair inference to be drawn from this statement is that the defendant felt that he would be rightly held in contempt if he named the person attacking him, and not that the judge would hold him in contempt without cause or reason. This statement in this regard is analogous to the reply of a little boy, to a suggestion by a companion that he, the boy, do something that he knew was wrong—"I can't do that because my mother will whip

me when I get home"—a confession of what he knew he would deserve, and not that he would be punished without cause by his mother, or that she was cruel. It is not libelous to charge a person with the doing of a thing which he may legally and properly do. Dusabek *v*. Martz, 121 Okla. 241 (249 Pac. 145). Nor did the defendant's statement that, if he was on trial for anything in Monroe County, "he would request a change of venue and a change of judge," amount to a defamatory charge, nor is it subject to the conclusion drawn by innuendo in the indictment, that Judge Willingham was unfair and prejudiced and would not grant or preside over a fair trial. This statement is not ambiguous, and cannot be amplified or extended by innuendo. It was simply a statement of opinion by the defendant that, if he was on trial, he would request a change of venue and a change of judge. He would have the right to make such a request, and doing so would not reflect upon the judicial character or integrity of the judge.

The words used by the defendant not being defamatory as they related to Judge Willingham, it was error for the court to overrule the general demurrer.

In view of the foregoing rulings, it becomes unnecessary to pass upon special grounds 7 and 8 of the demurrer, which attacked the indictment and Code § 26-2101, which defines the offense of libel, on the ground that they violate the defendant's right to freedom of speech as guaranteed by the State and Federal Constitutions.

*Judgment reversed. All the Justices concur.*