### 51154. BROWN v. CAPRICORN RECORDS, INC.

MARSHALL, Judge.
     Rev. Pearly Brown, plaintiff below, sued Capricorn Records, Inc., alleging two counts of invasion of privacy: (1) that defendant published a photograph of plaintiff which placed him in a false light in the public eye and (2) that the photograph was an appropriation, for defendant's advantage, of the plaintiff's name and likeness. Plaintiff also sought punitive damages alleging that the torts were "intentional and knowing" on the part of defendant. Defendant moved for summary judgment and was granted same as to the "false light" theory and as to punitive damages, leaving for trial the "appropriation" theory of recovery. Plaintiff appeals, enumerating as error the elimination of these two elements of his complaint. *Held:*
     1. In support of his "false light" theory of recovery, plaintiff produced evidence at the summary judgment hearing that plaintiff was an elderly Negro preacher and minstrel. He was born blind, and from an early age has supported himself and his family by singing in the streets, usually in Americus and Macon. In later life he also performed at folk festivals and on college campuses on occasion. In January, 1974, he happened to be on a street in Macon when photographs were being taken of a rock and roll group named "Wet Willie." The photographs were being taken to put on the cover of a new "Wet Willie" record album to be released by the defendant, Capricorn Records, Inc. Some of the members of the group recognized Rev. Brown and, after some exchange of greetings and other conversation, Rev. Brown agreed to let himself be photographed. Rev. Brown testified that he did not know that the photograph might be used for commercial purposes. Shortly thereafter, Capricorn released a record album entitled "Wet Willie Keep on Smilin' " on the front

cover of which a photograph of the plaintiff is prominently displayed. A much smaller and different color photograph of the group, "Wet Willie," is displayed in an upper front corner of the album cover. In the background of the photograph of the group is a neon sign in the front window of a liquor store saying "W. E. Brown Liquor Store." The larger, close-up photograph of Rev. Brown shows him playing his guitar and singing by himself in front of the same store (though it is not readily apparent that it is the same store) and wearing his usual sign saying, "I was born blind. God love a cheerful giver. Rev. Pearly Brown."

Plaintiff contends that because he is a preacher and sings only religious songs and has never touched a drop of liquor in his life, the depiction of him on the "Wet Willie" record album has upset him and others who have known him as a religious man because he has been thereby associated with liquor and rock and roll music.

Assuming such associations to be true, we must conclude that such publication does not hold plaintiff in a "false light" in the public eye.

To constitute the tort of invasion of privacy by publicity which places one in a false light in the public eye, there must be established as one of the elements of the tort, that the publicity was false; to wit, it depicts the plaintiff as something or someone which he is not. *Cabaniss v. Hipsley,* 114 Ga. App. 367, 376-7 (151 SE2d 496). This element of falsity is absent from plaintiff's evidence, because, as the facts indicate, Rev. Brown was in fact associated with the liquor store and with rock and roll music.

By way of cross examination at the hearing, Rev. Brown testified that he and W. E. Brown, the proprietor of the liquor store, are "close" friends, that Rev. Brown stays in the hotel next door to the liquor store when he is in Macon, that he takes his phone calls in the store, sings on the sidewalk in front of the store, and comes in the store after "he has played [music] around the streets all day." Therefore, if anyone wished to make an association between Rev. Brown and the liquor store, they could do so independent of the photograph on the record album. His association with the store is a true one. Whatever innuendos people may draw from such association (that

he is a "wino," an alcoholic or a person of immoral character) is a matter of individual thought processes, not enhanced, abetted, distorted or misrepresented by the photograph on the record album. The photograph depicts a blind street singer on a public street. It is not a false depiction. See *Cabaniss v. Hipsley,* 114 Ga. App. 367 (3), supra.

By the same token, if we assume that the photograph on the album associates the plaintiff with rock and roll musicians, such association is not false. The facts developed at the hearing show that, in fact, plaintiff had been associated with rock and roll music in the past.[1] Plaintiff testified at the hearing that he has performed at the Newport Jazz Festival, the Washington Folk Festival, Carnegie Hall, George Washington Carver [sic], Mercer University, the University of Georgia in Athens and Georgia College in Milledgeville. At many of these engagements, music other than religious music was played including rock and roll, folk, jazz, etc. On one occasion, the "Wet Willie" group put on a concert at the University of Georgia for the benefit of Rev. Brown and in his presence. Also, on the day of the photography session in Macon, members of the group recognized him from past associations and he acknowledged their friendship. He testified he was also friendly with another rock and roll group, the Allman Brothers, stating that as to Duane Allman, "I learnt him my style." Thus, even though plaintiff testified that he never performed with a rock and roll group, and that such music was not his style, he

---

[1]Plaintiff claims to be a folk musician whose repertoire included only gospel or religious songs. It is noted that the lyrics in some of the songs featured in the "Wet Willie" album in question referred to the Lord in a religious sense. Many churches today incorporate bands with upbeat music as part of their liturgy. Conversely, many so-called "rock" musicians sing spiritual religious songs. The line between these types of music has become blurred. At any rate, we assume, as plaintiff does, that there is a distinction and that for him to be on the wrong side of the line is deleterious.

nevertheless associated himself with activities and people in the rock and roll business. This association is not derived solely, if at all, from the album cover but from his real life. Seè *Cabaniss v. Hipsley,* supra.

"To entitle the defendant to a summary judgment the undisputed facts as disclosed by the pleadings and evidence must negate at least one essential element entitling plaintiff to recovery and *under every theory fairly drawn from the pleadings and evidence." Henderson v. Atlanta Transit System,* 133 Ga. App. 354, 356 (210 SE2d 845). As to this theory of the plaintiff's complaint the defendant has negated the element of falsity and was properly granted summary judgment.

2. " 'Punitive damages can be awarded upon the same basis as in other torts, where a wrongful motive or state of mind appears, but not in cases where the defendant has acted innocently, as for example in the belief that the plaintiff has given his consent.' " Prosser, Law of Torts (3d Ed.), p. 844; *Cabanis v. Hipsley,* 114 Ga. App. 367, 383, supra.

Here the question of punitive damages involves issues of fact (whether Capricorn acted with malice or innocently) which should be resolved, along with the "appropriation" theory of the alleged tort, by the trier of fact. It was error to grant summary judgment as to this issue.

*Judgment affirmed in part and reversed in part. Bell, C. J., and Webb, J., concur.*

ARGUED SEPTEMBER 17, 1975 — DECIDED NOVEMBER 12, 1975 — REHEARING DENIED DECEMBER 2, 1975 —

*Harris, Watkins, Taylor & Davis, Phillip R. Taylor, G. McGregor Jordan, Jr.,* for appellant.

*Jones, Cork, Miller & Benton, H. Jerome Strickland, Hubert C. Lovein, Jr.,* for appellee.