## 60901. WILLIAMS v. CHURCH'S FRIED CHICKEN, INC. et al.

Pope, Judge.

On May 20, 1979, appellant Hosea L. Williams, as president of the Metro Atlanta Southern Christian Leadership Conference (SCLC), sent a mailgram to the Chairman of the Board and President of appellee Church's Fried Chicken, Inc. (Church's) in San Antonio, Texas containing the following message:

"Several store managers, scores of present and past employees of your company have filed charges against your company with the Metro Atlanta SCLC, alledging [sic] management abuse of store managers and employees by area and division authorities; force [sic] slave working conditions; racial discrimination; usurping of employees fringe benefits; inhuman treatment of store managers; willfully defaulting on company guarantees made in the 1977 employee agreement; failure to implement and [sic] affirmative action program; practicing unfair demotion procedures and outright violating of company standard policy." The chairman and president were to meet with Williams within 24 hours in the SCLC offices in Atlanta; failure to meet this demand would "definitely force officials of SCLC to lead the citizens of Atlanta in a total withholding patronage campaign against all Church's Fried Chicken Stores."

This message was referred to appellee Milton Sanders, Director of Operations for Church's in the southeastern United States, which includes 235 stores. Sanders testified by deposition that he immediately called Williams to ask him "if it was possible that he had some information about anything and questions that my employees had that I didn't know about, I would be more than willing to sit down and talk with him and discuss it with him." According to Sanders, Williams responded by asking "how come, when I first came to this city—his exact words—I did not contact him? I think my answer was back to him, that I had no knowledge of him; I didn't know who he was or what he represented.

"His second question to me was 'Milt, I heard you have met with Maynard Jackson.' My response was 'Yes, I have.' I tried to explain to Mr. Williams at that point in time, when I first came back in November, we gave out some scholarships to Morehouse, Morris Brown and Clarke College, through the United Negro College Fund. It was approximately thirty-five hundred dollars ($3,500.00). We did it at a press conference at the Mayor's office, with Maynard Jackson, which was my first and only direct contact with the Mayor.

"From this answer, Mr. Williams flew off the hook, said he was the big man in this city. I didn't understand who he was, and I had made a drastic mistake by talking with Maynard. And he mentioned

several other prominent names, and I did not come to him . . . He hung the phone up, said he would not meet with me, period."

Williams began organized picketing of various Church's stores on May 22, also distributing leaflets alleging numerous abuses such as substandard wages, hours, terms and conditions of employment and that Church's was deceiving and mistreating both its employees and managers.

Approximately two weeks into the strike, Church's also began to distribute leaflets prepared by Sanders to the public in general and specifically to its customers. One of these flyers apologized for any inconvenience the people picketing may have caused, stating that "these people are not employees of this store nor do they represent the managers or team members of this store. We feel their actions are self-serving and not in the best interest of you or your community . . . We are an equal opportunity employer by choice."

A second leaflet was labeled: "Rev. Hosea L. Williams Harassing Church's Fried Chicken?" The text was as follows:

*"Who Is Hosea L. Williams?* He is an entrepreneur, businessman and capitalist. He has an interest in Southeastern Chemical Manufacturers and Distribution Corp. and Metro Atlanta SCLC Typesetting and Printing Company. His intentions are to try and force us to make deals with his companies. Deals that would benefit him directly. Since 1977, Metro Atlanta SCLC Typesetting and Printing Company has received from Church's Fried Chicken $15,000, and Southeastern Chemical Company has received from Church's Fried Chicken $27,000. Mr. Williams wants Church's to purchase even more cleaning compounds and paper goods.

*"Rev. Hosea L. Williams Is Only Concerned With Himself* and what can benefit him personally and politically. He only pickets our stores to draw your attention to him. None of the Church's employees are picketing. He is using non-employees of Church's to spread his distortions.

*"Rev. Hosea L. Williams Totally Misrepresents The Facts* and distorts information to our customers and to our employees concerning their wages and benefits. He apparently intends to continue to insult your intelligence by continuing these falsehoods. Our employees know that they are well paid and receive numerous benefits. They participate in our Sick Leave Program, Stock Purchase Plan, Educational Benefits, Uniform Allowance, Meal Discounts, Accident and Disability Insurance, Travel Accident Insurance, Group Health Insurance, 24-Hour Insurance and Life Insurance.

*"Church's Fried Chicken has always been a community leader,* especially in the Black Community. We have made contributions to

SCLC, Martin Luther King Center for Social Change, NAACP, NAACP Membership Drive, NAACP Freedom Fund, NAACP Contest Pageant and Ball, Martin Luther King, Jr. Memorial Foundation, First Annual Atlanta Free Jazz Festival, Ebenezer Baptist Church, National Domestic Workers of America, Scholarship-Atlanta University Center, Upward Bound Week-Clark College, Baptist Childrens Home, Feed the Hungry, Butler Street YMCA, United Negro College Fund, Sarah Murphy Orphanage and Black Professional Athletes Wives.

"We intend to continue to support our employees and the community. Rev. Williams knows this, but he continues to spread half-truths and distortions to you.

*"We at Church's Fried Chicken* apologize for the harassment that has been inflicted upon you our customers by this self-servicing [sic] politician and hope that this statement has helped you understand why Hosea Williams is picketing us. We, however, are not interested in helping him increase his corporate wealth and benefit him politically at the expense of you or us. We are interested in providing you with quality product at the least expensive price with fast, courteous service. Thank you for your patience.

"Church's Fried Chicken, Inc."

This leaflet also contained copies of advertising photographs of appellant Williams as "Head of Research and National Director of Marketing and Sales" of Southeastern Chemical Manufacturers; Hosea L. Williams, Jr. as President and General Manager; and a reproduction of a check made out to Southeastern Chemical for $2,676.24 issued by Church's. A letter from Milton D. Sanders was also distributed, stating that over half the stores owned by Church's employees were owned by blacks and other minorities and setting out all the benefits and extra compensation received by its employees.

On June 29 appellant Williams filed suit against Church's and Sanders, alleging that he had been libeled and defamed by the following falsehoods printed and distributed by the appellees: that he was an entrepreneur, businessman and capitalist; that he had an interest in Southeastern Chemical; that he intended to force Church's to make a deal with his company to purchase cleaning compounds and chemicals which would benefit him directly; that he is only concerned with himself and what can benefit him personally and politically; that he pickets only to draw attention to himself; that no Church's employees are picketing and non-employees are being used to spread his distortions; that he totally misrepresents the facts and distorts information to Church's customers and employees concerning wages and benefits; that he apparently continues to insult the intelligence of customers and employees by these falsehoods; that

Church's employees know they are well paid and receive numerous benefits; that Church's has always been a community leader, particularly in the black community; that Church's apologizes for the harassment inflicted by Williams and the strike and hopes its statement would help its customers and employees understand why Williams was picketing it; and that Church's was not interested in helping him increase his corporate wealth or benefit politically at the .expense of Church's or its customers and employees. Appellant Williams' complaint also alleged invasion of privacy, tortious interference with his business affairs and, by amendment, abuse of legal process.

Appellees responded, denying the essential allegations, and filed a counterclaim, the merits of which are not involved in this appeal. After the taking of depositions and other discovery, appellees filed a motion for summary judgment based upon the pleadings, depositions and exhibits filed with the court. The appeal is from the grant of that motion.

1. Williams contends that the trial court erred in finding that he was a public figure and that the requisite constitutional malice was not established. We do not agree. Appellant's own pleadings and deposition testimony demonstrate that he is a public figure as defined by New York Times v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686, 95 ALR2d 1412) (1964). Indeed, he declares himself to be a public figure, a nationally known civil rights leader, developer of Third World alliances, orator, elected member of the Georgia House of Representatives and spiritual leader of the Martin Luther King, Jr. People's Church of Love. He speaks freely of receiving publicity for various arrests and his participation in politics and notes that he has led many well publicized demonstrations. He called several press conferences to publicize his boycott of Church's. We need not reiterate the law which was earlier reviewed in depth by this court in a case involving the same appellant, and which is controlling; the conclusion there reached is equally applicable here. "Williams, whether deemed a dissident of notoriety or considered a champion for civil rights, in his own right was at the time of the questionable remarks, and is now, a 'public figure.' " *Williams v. Trust Co.,* 140 Ga. App. 49, 54 (230 SE2d 45) (1976).

Nor do we think that actual malice on the part of Church's has been shown. "The basic rule denying full protection of the state libel laws, because limited by the First Amendment (as adopted by the Due Process Clause of the Fourteenth Amendment), was set forth in New York Times v. Sullivan, supra, 376 U. S. at 280. Under the fundamental standard there enunciated, a public official might be allowed the civil remedy of recovery of damages for slander or libel

only if he establishes that the utterance was false *and* made with actual malice, that is, 'with knowledge of its falsity or in reckless disregard of whether it was false or true.' [Cit.] And it is no different whether the complainant be a 'public official' or a 'public figure.' [Cit.]" *Williams v. Trust Co.,* 140 Ga. App. 49, 54, supra.

Appellees introduced evidence showing that appellant Williams has been and was at the time of the boycott the leader of Metro Atlanta SCLC and that in this capacity he totally controls the Metro Atlanta SCLC Typesetting Company which printed the leaflets used to instigate the picketing and boycott of Church's. Based upon appellee Sanders' conversations and previous dealings with Williams, Sanders honestly believed that Williams was picketing and causing others to picket in order to force Church's to continue a business relationship with Southeastern Chemical. Sanders did not know that Williams was no longer acting as head of Research and National Director of Marketing and Sales of Southeastern Chemical at the time of the boycott. The leaflet which is the basis of Williams' suit against appellees was published because Sanders considered it the best means of advising the general public about the past relationship between Williams and Church's and not as a personal vendetta against Williams. Appellees held Williams responsible for the strike because of untruths Williams published both orally and through his pamphlets and articles (in the "People's Crusader," the "official organ of the Martin Luther King, Jr. People's Church of Love"), printed by the Metro Atlanta SCLC Typesetting Company, all of which was supervised by Williams. Appellant presented no evidence that the statements in the leaflet were made with actual knowledge or serious doubt as to their truth or falsity.

These facts as established by the depositions of Williams and Sanders made a prima facie showing that there was no actual malice in the constitutional sense in the leaflets published by appellees. Appellant failed to show that any actual malice existed and, in the absence of such showing, summary judgment was properly granted. Bon Air Hotel, Inc. v. Time, Inc., 426 F2d 858 (5th Cir. 1970); *Williams v. Trust Co. of Ga.,* 140 Ga. App. 49, 56 (4), supra.

2. This court has recently recognized that there is "no sound reason to conclude that where there is a pending valid counterclaim, the trial court *must* deny a persuasive and valid motion for summary judgment, or alternatively, that it is error per se to grant a motion for summary judgment where there is a pending, valid counterclaim." *Mock v. Canterbury Realty Co.,* 152 Ga. App. 872, 878 (1) (264 SE2d 489) (1980). We do not consider the issues in the appellees' counterclaim to be so "intertwined that it would be error to dispose of the complaint without ruling on the counterclaim," as urged by

appellant, and find no reversible error on this ground.

3. There is no evidence of record to bear out appellant's contention that appellees' answers to interrogatories were evasive and incomplete, or that the trial court did not consider these answers in granting summary judgment. Enumeration 1 (d) is without merit.

4. Appellant asserts that summary judgment was improperly granted against his abuse of process claim because Code Ann. § 81A-130 provides that depositions shall be under seal, and appellees admit they used Williams' deposition to support their complaint against him stemming from the same strike/boycott before the National Labor Relations Board (NLRB). This enumeration is not sustained by the record, which shows the following facts.

The attorney independently representing Church's in unfair labor practice charges against Williams used excerpts of three pages of Williams' deposition in connection with the NLRB investigation. On November 9, 1979, this attorney wrote a letter to the NLRB, a copy of which was sent to Williams, requesting that the NLRB keep the excerpts confidential as is always done as a matter of policy until trial. On November 16, Williams amended his complaint in the instant suit to allege an abuse of process because excerpts of his deposition were disclosed to the NLRB. On November 30, the NLRB's investigation of the unfair labor practice charges against Williams was completed, and the charges were dismissed before trial was reached. Therefore, the information in the excerpts was not disclosed to anyone outside the employment of the NLRB; the deposition was not impermissibly used in violation of Code Ann. § 81A-132, as contended by appellant; and Williams has failed to show how he was harmed or suffered any damages.

5. Appellant challenges the grant of summary judgment as to his invasion of privacy and tortious interference with business claims on the grounds that the motion did not properly raise these issues, nor did the pleadings, depositions or affidavits establish the requisite elements of these claims. To the contrary, a complaint based on the right of privacy may be disposed of summarily where it is not sufficiently drawn and there is no evidence to sustain a verdict on it. *Cabaniss v. Hipsley,* 114 Ga. App. 367, 371 (1) (151 SE2d 496) (1966). "[T]he invasion of privacy is in reality a complex of four loosely related torts . . . These four torts may be described briefly as: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Cabaniss,* supra, at p. 370.

It would seem to require no argument that there was no physical

intrusion into Williams' seclusion, solitude or private affairs here. See *Hines v. Columbus Bank & Trust Co.,* 137 Ga. App. 268 (223 SE2d 468) (1976). Likewise, there was no disclosure of "private, secluded or secret facts and not public ones," nor was any matter concerning Williams which was made public by appellees "offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." *Cabaniss,* supra, at p. 372. The only "false light" in which Williams was depicted was in being head of Research and National Director of Marketing and Sales of Southeastern Chemical at the time of the strike and boycott, which he was alleged to have organized for self-serving reasons in that capacity. However, we fail to see how this evidence would authorize a verdict for general damages for injury to the appellant's sensibilities or reputation since Williams' resignation was not publicized and he admits appellees had no way of knowing he had resigned. Compare *Brown v. Capricorn Records,* 136 Ga. App. 818 (222 SE2d 618) (1975). Clearly there was no appropriation for the defendant's benefit, advantage or use of Williams' name or likeness for commercial exploitation as in *Waters v. Fleetwood,* 212 Ga. 161 (91 SE2d 344) (1956), or *Goodyear Tire &c. Co. v. Vandergriff,* 52 Ga. App. 662 (184 SE 452) (1935). Finally, a cause of action for tortious interference with business must establish a malicious, wrongful and intentional injury to the business of another, which was not proved here. *NAACP v. Overstreet,* 221 Ga. 16 (142 SE2d 816) (1966) (Cert. dismissed 384 U. S. 118) (1966) and cases cited therein. Appellees, as the parties moving for summary judgment, met their burden of affirmatively negativing Williams' claims and showing that he was not entitled to recover under any theory of the case by evidence demanding a finding to that effect. Cf. *Lester v. Trust Co. of Ga.,* 144 Ga. App. 526 (241 SE2d 633) (1978).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED MARCH 17, 1981 —

*J. M. Raffauf,* for appellant.
*William Scott Schulten, Frederick A. Stuart, John W. Collier,* for appellees.