## 65201. MACON TELEGRAPH PUBLISHING COMPANY v. ELLIOTT.

QUILLIAN, Presiding Judge.

This is an appeal from a verdict and judgment for plaintiff-appellee Elliott in an action against defendant-appellant publishing company for libel.

Appellee was a juror in the 12-day retrial of a murder case in which the defendant was acquitted, the first trial having resulted in a mistrial. Three days after the trial concluded, a reporter for appellant spoke to appellee on the telephone and questioned her about the trial. As a result the following appeared in an article about the trial published in appellant's newspaper:

"Two other members of the jury that acquitted Lumpkin of murder Friday disclosed in post-trial interviews that they had already made up their minds before the panel met collectively to discuss the case . . .

"Betty Elliott, a bus driver for the Bibb County Board of Education, and Louie A. Bridges, a Robins Air Force Base employee, said they decided to vote not guilty before deliberations began.

"Although they couldn't be specific, it was some time within a day or two before the case went to the jury when they formed an opinion."

Appellee is the Betty Elliott named in the article, and after demanding and failing to receive a retraction she commenced this action under Code Ann. § 105-703 (Ga. L. 1893, p. 131), alleging that the statements were not made by her and that they were false and maliciously defamatory. A jury returned a verdict for appellee of $50,000 actual and $150,000 punitive damages. *Held:*

1. Code Ann. § 105-703, supra, provides: "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of any individual and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel, the publication of such libelous matter being essential to recovery."

Appellant asserts that the alleged statement is not defamatory as a matter of law.

Except where an alleged writing is not defamatory as a matter of law, the general rule is that the issue of defamation is a matter of fact to be determined by a jury. *Atlanta Journal Co. v. Doyal,* 82 Ga. App. 321 (3), 330 (60 SE2d 802).

Appellant cites *Garland v. State,* 211 Ga. 48 (84 SE2d 13) in support of its assertion. *Garland v. State* was a criminal defamation case in which it was held as a matter of law that the defendant's publication in a newspaper article concerning a murder conviction that the jury "did not even deliberate on the case — the verdict was already made," was not defamatory of the jury members. The court found that the words meant that the jury did not deliberate or consult with one another to form an opinion as to guilt or innocence and that their collective minds had arrived at a verdict of guilty when they reached the jury room.

The instant case is distinguishable from *Garland v. State,* as the writing is capable of the construction that the appellee had made up her mind to vote not guilty well before she entered deliberations.

While *Garland v. State* could find nothing defamatory in an article indicating that a juror without discussion could make up his mind as soon as he entered the deliberation room, it stated that it was improper for a juror to make up his mind as to guilt or innocence before all of the evidence has been submitted and the court has instructed on the law.

The parties stipulated that the article's statement that "a day or two before the case went to the jury" was a time when the prosecution had rested. From this it is argued that the article therefore could not be defamatory as a matter of law because if the prosecution had not proved the case beyond a reasonable doubt, saying that a juror made up her mind after the prosecution rested does not charge the juror

with any improper conduct as the juror has the right to have such an opinion at that point in the trial.

This argument does not recognize that in considering whether a writing is defamatory as a matter of law, we look not at the evidence of what the extrinsic circumstances were at the time indicated in the writing, but at what construction would be placed upon it by the average reader. *Southeastern Newspapers v. Walker,* 76 Ga. App. 57, 60 (44 SE2d 697); *Atlanta Journal Co. v. Doyal,* 82 Ga. App. 321 (3), 330, supra; *Garland v. State,* 211 Ga. 44, 48 (84 SE2d 9).

Thus, in the instant case, since the article does not indicate that the prosecution had rested or that appellee had heard all of the state's evidence and found it insufficient to prove guilt, the average reader, not being aware of these matters from the article and not otherwise having the knowledge that the prosecution had rested at the time appellee allegedly decided to vote not guilty, could quite easily come to the understanding that appellee had not properly done her duty as a juror by deciding the case without hearing all of the evidence. In other words, the article is capable of having more than one meaning.

"[W]here words are capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, which of the two meanings will be attributed to it by those to whom it is addressed or by whom it may be read. [Cit.]" *Reece v. Grissom,* 154 Ga App. 194, 195 (267 SE2d 839).

Accordingly, taking the plain meaning of the language of the article as would an average reader thereof, we cannot say as a matter of law that the article is not defamatory. *Horton v. Georgian Co.,* 175 Ga. 261 (3) (165 SE 443); *Abernathy v. News Pub. Co.,* 45 Ga. App. 693 (3) (165 SE 924); *Praireland &c. of Ga. v. Thompson,* 135 Ga. App. 73 (2) (217 SE2d 296).

2. Appellant claims the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on the issue of its liability for punitive damages.

Gertz v. Welch, 418 U. S. 323, 347-50 (94 SC 2997, 41 LE2d 789) held that while a private (as opposed to a public figure or public official) defamation plaintiff may recover actual damages without a showing of actual malice, such a private plaintiff cannot recover punitive damages without a showing of actual malice on the part of the defendant; that is, "with knowledge that [the defamation] was false or with reckless disregard of whether it was false or not." New York Times v. Sullivan, 376 U. S. 254, 280 (84 SC 710, 11 LE2d 686). This holding was recognized in *Williams v. Trust Co. of Ga.,* 140 Ga. App. 49 (1), 52 (230 SE2d 45).

Appellant argues that there is no evidence that its reporter had

knowledge that what he wrote was false or that he wrote the story with reckless disregard for the truth. This is based on the reporter's testimony that what he wrote and was published was what appellee had told him; that is, that it was true.

On the other hand appellee maintains that based on her testimony that the article was false because she did not tell the reporter the things he published, the actual malice requirement for punitive damages was met as a fictional story meets the actual malice requirement; that is, that the reporter knew it was false when the article was published.

Thus, there was conflicting testimony on the issue of whether the publication was made with knowledge of its falsity. Where evidence is in conflict on an issue and does not demand a verdict, it is error to direct a verdict thereon. OCGA § 9-11-50 (a) (Code Ann. § 81A-150 (a)). From our review of the evidence and the trial court's charge on this issue, we find that the jury could reasonably conclude that the reporter, and thus appellant, was aware that the statements attributed to appellee were false when they were published and established actual malice.

We find no merit in appellant's contention that even if the reporter had knowledge of falsity it could not be imputed to appellant, as the rule in Georgia in libel is that the malicious conduct of an employee is imputed to the employer provided it is within the scope of his authority. *Atlanta Journal Co. v. Doyal,* 82 Ga. App. 321, 335, supra. Accord, *Garren v. Southland Corp.,* 237 Ga. 484, 485 (228 SE2d 870).

Therefore the trial court did not err in denying appellant's motion for directed verdict and judgment notwithstanding the verdict.

3. The trial court did not err in denying appellant's motion for a new trial made on the general grounds contending that there was no evidence that it libelled appellee or that appellee was entitled to punitive damages. "We have reviewed the record and find the verdict was authorized by the evidence. [Cits.] The evidence presented questions for the jury which were resolved in favor of the [prevailing party]. [Cit.] The evidence did not demand a verdict [for the losing party] and the jury was authorized by the evidence to reach a finding [for the prevailing party]. [Cit.] The jury verdict had the approval of the trial judge, and after verdict the evidence is to be construed in the light most favorable to the prevailing party and every presumption and inference is in favor of sustaining the verdict. [Cit.] And, if there is any evidence to sustain the verdict of the jury, an appellate court will not disturb it. [Cit.]" *Suber v. Fountain,* 151 Ga. App. 283 (1), 285 (259 SE2d 685).

4. It is contended that the awards of actual and punitive damages were excessive.

" ' "When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, we are not authorized to set it aside as being excessive (Cits.)" ' [Cit.] 'This court does not have the broad discretionary powers invested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the witnesses, including the plaintiff on the stand, has approved the verdict, this court is without power to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means. (Cit.)' [Cit.]" *Melton v. Bow,* 145 Ga. App. 272 (4), 274-5 (243 SE2d 590).

In the absence of any showing of prejudice or bias or corrupt means in reaching the verdict or any abuse of the trial court's discretion in refusing to overturn the verdict, we cannot say that the awards of actual and punitive damages were excessive as a matter of law.

5. Error is enumerated because three witnesses for appellee were permitted, over objection, to testify as to what the alleged defamatory language meant to them.

Libel is either per se or per quod. Defamatory words which are actionable per se are those which are recognized as injurious on their face — without the aid of extrinsic proof. However, if the defamatory character of the words do not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo. See generally 53 CJS 42-43, Libel and Slander, § 8. "The office of an innuendo is to explain that which is of doubtful or ambiguous meaning in the language of the publication, but cannot enlarge the meaning of words plainly expressed therein." *Park & Iverson v. Piedmont &c. Life Ins. Co.,* 51 Ga. 510 (1). Where the words used are capable of having two or more different meanings, they are ambiguous and the plaintiff may allege the meaning with which he claims they were published, and it is for the jury to determine whether they were so published. *Blackstock v. Fisher,* 95 Ga. App. 117, 121 (97 SE2d 322). The testimony of readers of the alleged defamatory language as to what they understood the words to mean may be admitted where the meaning is doubtful or ambiguous. 53 CJS 311, Libel and Slander, § 201b. Compare, *Kaplan v. Edmondson,* 68 Ga. App. 151 (1) (22 SE2d 343). See, 3 Restatement of Torts (2d) 164, § 563e.

The language of the article in the instant case was not libelous per se and the trial court correctly did not charge the jury to that effect. As we have heretofore indicated, where the alleged language is not ruled defamatory or not defamatory as a matter of law, such language means what the average reader construes it to mean. That being so, the testimony of witnesses as to what the language means to them is relevant and admissible evidence on the issue of the meaning of ambiguous language. *Reece v. Grissom,* 154 Ga. App. 194, supra, cited by appellant, is inapposite as the alleged language therein was held to be not defamatory as a matter of law.

6. The trial court did not err in giving appellee's third and fourth requests to charge. As indicated above, the alleged language was not libelous per se and was capable of more than one meaning. The contentions of the parties and the evidence clearly show this. Therefore, the challenged charges were properly adjusted to the evidence.

7. Appellant's fourth request to charge was amply covered by the charge given which defined newspaper libel in the language of Code Ann. § 105-703, supra.

8. The remaining allegations of error are either resolved by the foregoing findings or are not meritorious.

*Judgment affirmed. Shulman, C. J., and Carley, J., concur.*

DECIDED FEBRUARY 8, 1983 —
REHEARING DENIED MARCH 10, 1983 — 

*Edward S. Sell III,* for appellant.
*Tim D. Hemingway, W. W. Hemingway,* for appellee.