## 77790. THOMASON v. TIMES-JOURNAL, INC.
### (379 SE2d 551)

Birdsong, Judge.

This is an appeal to the order of the superior court granting appellee's motion for summary judgment.

On October 23, 1983, appellee published an obituary regarding appellant. Appellant, a Caucasian female, in fact was alive at the time the notice was published and circulated. The obituary read in pertinent part as follows: "Paulette Thomason, 38, of Vinings died Monday. Services will be at 1 p.m. Thursday at Cascade Hill Funeral Home in Atlanta. . . . Survivors include his father, S. Paul Thomason . . . two sisters . . . one brother . . . three sons . . . several nieces and nephews. . . . Cascade Hill Funeral Home of Atlanta is in charge of arrangements." That night a reporter for appellee discovered that the obituary was false. The next day, appellee published the following retraction: "A funeral notice was run in error Wednesday for a Vinings woman named Paulette Thomason. The Journal learned after deadline that the obituary notice was false."

Appellant commenced suit alleging in Count 1 that publication of the false obituary constituted "a libel and a slander"; alleging in Count 2 that the reckless publication of the obituary made with total indifference "was negligent and a malpractice on the part of [appellee] newspaper"; and, in Count 3 alleging that this publication "was an invasion" of appellant's "right to privacy." *Held*:

1. Appellant enumerates as her first error that the trial court erred in granting appellee's motion for summary judgment as to Count 1.

An essential element of libel is that some type of *defamatory* statement must have been published. See generally OCGA § 51-5-1. As a general rule, the question whether a particular publication is libelous, that is, whether the published statement was defamatory, is a question for the jury. *Morrison v. Hayes*, 176 Ga. App. 128 (1) (335 SE2d 596). However, if the statement is not ambiguous and can reasonably have but one interpretation, the question is one of law for the judge. The trial judge should read and construe the publication as a whole, and thereafter " ' "may find that it is not defamatory, that it is

defamatory, or that it is ambiguous and the question is one for a jury." ' " Id. In the case sub judice, the trial court concluded as a matter of law that the publication of the false obituary was not libelous. We agree.

In Georgia, a false and malicious defamatory statement to constitute a libel also must tend "to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1. It is generally recognized that "[i]n the absence of special circumstances which add another meaning to the words, it is not defamatory to say that a person is dead." Prosser & Keeton on Torts (5th ed.), Defamation § 111, p. 774; see 50 AmJur2d, Libel & Slander, § 85. Thus, absent special circumstances, the publication of a false report of death, such as a false obituary, is not libelous per se, and it is not defamatory to say therein that a person is dead. *O'Neil v. Edmonds,* 157 FSupp. 649 (E.D. Va. 1958); *Cardiff v. Brooklyn Eagle,* 190 Misc. 730 (75 NYS2d 222); see also *Street v. Nat. Broadcasting Co.,* 512 FSupp. 398, 406, n. 4 (E.D. Tenn. 1977).

However, as a defamatory statement may be made in indirect terms or by insinuation, the publication thereof must be construed as a whole. See *Garland v. State,* 211 Ga. 44, 46 (84 SE2d 9). In doing so, the courts "will not hunt for a strained construction in order to hold the words used as being defamatory." Id. In considering whether a writing is defamatory as a matter of law, any relevant extrinsic circumstances will be considered, because "[a] statement may . . . carry a defamatory meaning only by reason of extrinsic fact or circumstances by use of innuendo, inducement and colloquium." *Walters v. Linhof,* 559 FSupp. 1231, 1236 (12) (D. Colo. 1983). Moreover, "we will not look at the evidence of what the extrinsic circumstances were at the time indicated in the writing, but at what construction would be placed upon it by the average reader." *Macon Tel. Pub. Co. v. Elliott,* 165 Ga. App. 719 (1) (302 SE2d 692), U. S. cert. den. 466 U. S. 971.

Appellant asserts that the published obituary was defamatory, because, in addition to falsely proclaiming her dead, it also falsely stated her sex and age, it omitted any reference to the existence of her surviving mother, thereby broadcasting certain negative connotations as to family relationships, and it implied that she was "to have funeral customs of a black funeral home." We disagree.

The approximate one year discrepancy in appellant's age and the erroneous use, on one occasion, of the pronoun "his" in the published obituary are in the totality of the circumstances minor in nature. In this regard, the law has historically declined to take notice of very small or trifling matters. Accordingly, we find that such discrepancies do not give rise to any "special circumstances" warranting departure from the general rule that it is not defamatory to publish a false

death notice.

The mere failure of appellee to list appellant's mother in the obituary as a survivor, likewise, does not warrant a departure from the general rule, as this failure to list does not provide any basis for a libel action. Usually, " 'an omission of information from a statement admittedly published will not support an action for libel.' " *Jim Walter Homes v. Strickland*, 185 Ga. App. 306, 309 (1) (363 SE2d 834); *Comer v. Nat. Bank of Ga.*, 184 Ga. App. 867 (2) (363 SE2d 153).

Further, like the trial judge, we are not persuaded by appellant's assertions and argument that "special circumstances" exist in this case, because the funeral home listed in the obituary "has primarily black clientel [sic]," her family "is white," and she has been "ridiculed and held in contempt" because the funeral home "serves primarily black people whose customs at death are different than whites." Appellee responds to this indecorous argument, in part, by quoting a passage from *Palmore v. Sidoti*, 466 U. S. 429 (104 SC 1879, 80 LE2d 421) (child custody case), the tenor of which is: "It would ignore reality to suggest that racial and ethnic prejudices do not exist or that all manifestations of those prejudices have been eliminated. . . . The Constitution cannot control such prejudices but neither can it tolerate them. Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." Id. at 433. Suffice it to say that any conduct attributed to appellant or her next of kin regarding the selection of a funeral home was lawful conduct. "It is not libelous to charge a person with the doing of a thing which he may legally and properly do," *Garland v. State*, 211 Ga., supra at 48, and in any event mere "[p]eculiarities of taste found in eccentric groups cannot form basis for finding of libelous inferences." *Fairley v. Peekskill Star Corp.*, 83 AD2d 294 (445 NYS2d 156 (2)) (1981). Also, the record in this case is entirely silent as to what so-called "customs at death" would be practiced by one racial group that would not be observed by the other. We will not speculate regarding this evidentiary deficiency. Accordingly, we find these assertions of error to be without merit.

2. Appellant's second enumeration of error is that the trial court erred in granting appellee's motion for summary judgment as to Count 2 of the complaint.

Although Count 2 of the complaint avers both negligence and malpractice on the part of appellee newspaper, appellant only asserts on appeal that Count 2 alleges "negligent publication of libel." As no citations of authority or argument are proferred in appellant's brief to support an averment of malpractice, we will treat this particular issue as having been abandoned. Rule 15 (c) (2); *Hazlett &c. Constr. Co. v. Virgil Womack Constr. Co.*, 181 Ga. App. 25 (1) (351 SE2d 218).

For reasons discussed in Division 1, above, we find that the obitu-

ary is not defamatory. Accordingly, we find this enumeration of error also without merit.

3. Appellant asserts in her brief that plaintiff is entitled to present the issue of punitive damages to a jury. This assertion was not made the basis of an enumeration of error, and the existing enumerations of error "cannot be enlarged to include issues not made therein." *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155 (2) (308 SE2d 382).

4. Appellant asserts that the trial court erred in granting a motion for summary judgment as to invasion of privacy, Count 3 of the complaint.

In Georgia, invasion of privacy "is in reality a complex of four loosely related torts." *Cabaniss v. Hipsley*, 114 Ga. App. 367, 370 (151 SE2d 496). In her brief, appellant argues and provides citations of authority regarding the invasion of privacy tort of "false light" publicity. Accordingly, we consider any issue regarding the other three disparate invasion of privacy torts as having not been asserted on appeal. See, e.g., *Hazlett*, supra; *Melton*, supra.

Our appellate courts have adopted a pragmatic approach in deciding the extent to which an individual's right to privacy should be protected. The right of privacy is qualified by the rights of others; it is not absolute. Thus, we recognize that " ' " '[t]here are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress.' " ' " *Elmore v. Atlantic Zayre*, 178 Ga. App. 25, 27 (341 SE2d 905).

It is well-recognized that an essential element of the "false light" tort of invasion of privacy is that "the false light in which the other was placed would be highly offensive to a reasonable person," Restatement of Torts 2d, § 652E (a), and "the hypersensitive individual will not be protected." Prosser & Keeton, supra, § 117 at 864. We conclude that this is the rule in Georgia as well. In *Cabaniss v. Hipsley*, supra at 372, this court held one of the elements of the "[p]ublic disclosure of embarrassing private facts" tort of invasion of privacy is that "the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." This court then adopted the Prosser view that "false light" cases differ from "public disclosure" cases primarily "in that one involves truth and the other lies, one private or secret facts and the other invention." Id. at 375. It thus is clear that the "offensiveness" element is common to both of these invasion of privacy torts. Id.; see *Williams v. Church's Fried Chicken*, 158 Ga. App. 26 (5) (279 SE2d 465); see also *Davis v. Gen. Fin. &c. Corp.*, 80 Ga. App. 708 (4) (57 SE2d 225).

We agree with the trial court's conclusion that as a matter of law publication of the obituary, when viewed in its totality, would not be offensive and objectionable to a reasonable person of ordinary sensi-

tivities.

Appellant's other enumeration of error and assertions also are without merit.

*Judgment affirmed. Banke, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in Divisions 1 and 3 and 4 but not entirely in Division 2.

Count 2 did not allege "negligent publication of libel" as such which, I agree, would fail as a matter of law if, as here, the publication was not libelous. That count alleged merely that the publication was false and was made recklessly, with a total indifference to the consequences, without verification of its truth, and without exercising ordinary standards "of common sense," apparently meaning the ordinary standard of care as set out in OCGA § 51-1-2.[1]

Thus, Count 2 was brought under the general tort statutes, OCGA §§ 51-1-1 and 51-1-6. See also OCGA § 51-1-8. Whether a claim would lie for negligent publication by a newspaper of a false statement about a private person which is not libelous, however, is not before us. That is because plaintiff has not pursued that question. She has narrowed her claim of simple negligence by asserting that it relates to "negligent publication of libel," both in her enumeration of error and in the summary judgment documents she submitted to the trial court. This is confirmed by the cases on which she relies, *Triangle Publications v. Chumley*, 253 Ga. 179 (317 SE2d 534) (1984), and *Diamond v. American Family Corp.*, 186 Ga. App. 681, 682 (1) (368 SE2d 350) (1988).

It is not disputed that the statement was untrue, and defendant's admission that it has a duty to publish truth is evidenced by the next-day correction. Ordinarily, breach of a legal duty which proximately causes damages is actionable. OCGA § 51-1-6. But we cannot enlarge appellant's enumeration. *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 158 (3) (308 SE2d 382) (1983). Nor can we rule on a point where no ruling was solicited from, or made by, the trial court. *Ga. Retail Assn. v. Ga. Public Svc. Comm.*, 165 Ga. App. 208, 209 (300 SE2d 544) (1983).

Having concluded that the publishing of an obituary when the person is alive is not libelous, negligent publication of what plaintiff insists is libel disintegrates as a cause of action.

---

[1] Pleadings are to be liberally construed. OCGA § 9-11-8 (f); *Plank v. Bourdon*, 173 Ga. App. 391, 393 (1) (326 SE2d 571) (1985).

Decided February 15, 1989 —
Rehearing denied March 6, 1989 —

*Adele Grubbs*, for appellant.

*Roy E. Barnes, Albert G. Norman, Jr., Bruce P. Brown*, for appellee.