STEWART *vs.* THE SWIFT SPECIFIC COMPANY *et al.*

An action for libel was brought, alleging that the publication had been made in a public newspaper, and was caused and procured by the defendants. The article complained of purported to be a voluntary interview between a reporter of a newspaper and the plaintiff, in which the plaintiff is represented as having made statements to the reporter to the effect that her mother, having been bitten by a cat, was afflicted with a disease similar to hydrophobia; that she dreaded the approach of water, suffered extreme pain, and was much swollen in her body and members; that she acted like a cat, purring and mewing, and assuming the attitude of a cat in the effort to catch rats, and did other like acts; and that a wonderful cure of this disease had been effected by a certain medicine, called S. S. S., which was sold by the defendants. The plaintiff alleged that the publication was altogether false:

*Held*, that such a publication furnished the basis for an action of libel brought by the daughter, and such action was not demurrable. .

(*a.*) Any publication which tends to expose a person to contempt or ridicule is defamatory and libelous.

March 23, 1886.

Libel. Parent and Child. Before Judge CLARKE. City Court of Atlanta. September Term, 1885.

Louise Stewart brought an action for libel against the Swift Specific Company and J. W. Rankin, to recover damages for an article alleged to have been falsely and maliciously published in the " Atlanta Constitution " and "Atlanta Journal," two newspapers. It was alleged also that the defendants, by such publication, had intended to create, and did create, an excitement in favor of the medicine sold by them, and known as S. S. S.; and that this publication tended to and did bring her into public contempt and injure her reputation. The plaintiff was the daughter spoken of in the article, which was as follows:

" A CAT-BITE STORY.

" A WOMAN BITTEN BY A COMMON CAT AND IS MARVELOUSLY CURED.

"A most remarkable case of suffering from the bite of a cat has just come to the eyes of a *Constitution* reporter. Several months ago, Mrs. Annie Stewart, a woman seventy years of age, was bitten by an

ordinary domestic cat. She gave the matter little attention at first, but after a short while, she developed symptoms of poison from the virus of the bite, which gradually grew from what amounted to almost nothing at the outset, to most alarming evidences of something very serious after a few weeks. She suffered intolerably, and finally lost the use of her limbs entirely. Yesterday the reporter called on her at her room in the James building on Whitehall street. The old lady welcomed him in person.

"'Is this Mrs. Stewart?'

"'Yes, sir,' she answered.

"'I have called to ask about your case; I understand you were bitten by a cat some months ago.'

"'Yes, sir; that is true; but I am much better now.'

"Just here a daughter of Mrs. Stewart looked up and said:

"'Pardon me, but my mother is very old, and I can better tell her story. What is it you wish to know?'

"'About the cat bite, how did it happen?'

"'Well, I don't know that, but a cat did bite her, and she has suffered a thousand deaths from it. It was as bad as hydrophobia, and something similar'

"'What were the symptoms?'

"'After the poisonous virus had gotten to work in her system, she had a tendency to imitate the actions of a cat. She would get down on the floor, crawl around and endeavor to catch rats. Then she would purr, mew and do a great many things suggestive of the characteristics of a cat. She hated the sight of water; also a similar symptom to what is always noticeable in violent cases of hydrophobia.'

"'Couldn't the doctors relieve her?

"'No, sir; we had some of the best medical aid in Atlanta, but none of them were able to do her a particle of good. She lost complete use of herself, and finally was unable to walk or sleep. The most piercing pains would dart through her body, causing her to scream at the top of her voice. These pains were constant, and while the paroxysm lasted, she was pitiable to behold. After a while, huge sores appeared on the small of her back, making her life one of extreme loathsomeness and torture. She had also a very heavy swelling about the abdomen, and no blood circulation at all in the lower extremities.'

"'What was finally done to relieve her?'

"'Dr. Bellamy at last suggested that we try Swift's Specific, which we did reluctantly; however, we did try it, and you see the result. It is marvelous. She lived for months with one foot in the grave. The knife-like pains have left her; circulation has been restored; she can work again, and seems so much recuperated that a new lease of life has been added to her years.'

'" The daughter of Mrs. Stewart is a most intelligent woman, and is confident that nothing saved her mother's life but the use of the S. S. S. remedy. The reporter thanked her cordially for the story and withdrew."

On demurrer, the case was dismissed, on th e ground that the publication was not libelous in character as to plaintiff. She excepted.

HOPKINS & GLENN ; REUBEN ARNOLD, for plaintiff in error.

REED, REINHARDT & O'NEILL ; HAYGOOD & MARTIN, for defendants.

JACKSON, Chief Justice.

This action was dismissed on demurrer. The question, therefore, is, are the words published of and concerning the plaintiff libelous? The publication is made in the newspapers, and consists substantially of statements reported by the reporter of the newspaper as having been made to him by the plaintiff concerning her mother; the singular conduct of that mother while under the influence of a cat bite ; the wonderful cure of this disease by a certain medicine called S. S. S., sold by defendants, who caused and procured the publication of the reporter in the " Atlanta Constitution." The singular conduct of the mother is represented as consisting of acts like a cat; of purring and mewing like a cat ; of assuming the attitude of a cat in the effort to catch rats, and of similar cat-like acts on the part of the mother. Her disease is described as similar to hydrophobia. She dreaded the approach of water, suffered extreme pain, and was much swollen in body and members. The question made is, whether such a publication, altogether false, given to the reporter by the daughter voluntarily, concerning her own mother, makes a libel upon the daughter.

By our Code,* " a libel is a false and malicious defamation of another expressed in print, or writing, or pictures,

---

*22974.

or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt or ridicule."

In Odgers on Libel and Slander, p. 20, it is thus defined: " Any words will be presumed defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy, which tend to injure him in his profession or trade, or cause him to be shunned or avoided by his neighbors."

By Lord Holt, in 3 Salkeld, 225—the case of Cropp *vs*. Tilney—it is said, " Scandalous matter is not necessary to make a libel; it is enough if the defendant induces an ill-opinion to be had of the plaintiff, or to make him contemptible and ridiculous; as, for instance, an action was brought by the husband for riding, *Skimmington*, and adjudged that it lay, because it made him ridiculous and exposed him."   See also Villers *vs*. Monsley, 2 Wils., 403, to the same effect.

And Parke, Baron, in O'Brien *vs*. Clement, 15 M. & W., 435, said: " Everything printed or written which reflects on the character of another, and is published without lawful justification or excuse, is a libel, whatever the intention may have been."

So, in his commentaries, 3d book, p. 125, Blackstone says: " A second way of affecting a man's reputation is by printed or written libels, pictures, signs and the like, which set him in an odious or ridiculous light, and thereby diminishes his reputation."

And in our own reports, 6 *Ga.*, 283, in *Giles vs. The State*, Chief Justice Lumpkin said: " At common law any publication is a libel, the tendency of which is to degrade and injure another person, or to bring him into contempt, hatred or ridicule, or which accuses him of a crime punishable by law, or of an act odious and disgraceful in society; and by the penal Code of this state, a libel is defined to be a malicious defamation, expressed either by printing, or writing, or signs, pictures and the like, tending to blacken the memory of one who is dead, or the honesty, virtue, integrity or reputation of one who is alive, and thereby expose him or her to public hatred, contempt or ridicule."

Therefore, the authorities are numerous, it appears, to the effect that any publication which tends to expose a person to contempt or ridicule is defamatory and libelous, and the question before us resolves itself into this, do these words, published concerning this plaintiff, as being furnished by her for a public newspaper of very wide circulation, to the reporter of that newspaper, have a tendency to bring her into public contempt or ridicule, they being voluntarily given to the reporter by her for publication concerning her mother?

That they tend to bring the mother into public ridicule and laughter and fun is very clear. It is rather difficult to read it without a sort of pity, which explodes in laughter, when the old woman is mewing like a cat and fixing to spring upon rats and mice. To publish a thing of the sort about a woman certainly tends to make her the subject of ridicule—a sort of butt for laughter and fun, which even her pitiable condition, her excruciating pains and swollen limbs and body can hardly repress. If such be the effect of such a publication about the mother upon her, what is the effect upon the daughter's character, who hastens to apologize for her mother's age and slowness of speech, and glibly tells the reporter, for publication in the "Constitution," such a tirade about the antics of her own mother? A feeling of contempt for one so eager to spread before the world such ridiculous conduct of her own mother rises spontaneously to the human breast, and leads to the belief that she cannot be a very grateful and dutiful daughter, or tends to the conjecture that money must have drawn the narrative from her, either because of extreme poverty or avaricious hunger. If, then, a libel be that publication which tends to load with public contempt the person who is falsely charged with furnishing the matter voluntarily for print, and which tend to lower her reputation as a sensible, modest and dutiful daughter, because she furnished for publication such foolish and ridiculous conduct of her mother, then this publication is defamatory

and libelous of this plaintiff, and she has the right to go before a jury upon the complaint she makes of its falsehood.

Judgment reversed.