77887. HUDSON et al. v. MONTCALM PUBLISHING
CORPORATION et al.
77888. GORDON v. HUDSON et al.
(379 SE2d 572)

BEASLEY, Judge.

Case No. 77887 is the appeal of plaintiffs Susan and Gary Hudson from the trial court's grant of summary judgment to defendant Montcalm Publishing Corporation in their suit for "negligent, fraudulent, reckless and intentional" invasion of privacy by way of publication. Summary judgment was based on a release executed by the Hudsons.

Mrs. Hudson's former husband, defendant Gordon, cross-appeals in Case No. 77888 from the denial of summary judgment for him, based on the statute of limitation.

The relevant facts are undisputed. As part of a pattern of general harassment of his ex-wife, Gordon submitted to *Gallery* magazine, a publication of Montcalm, a nude photograph of Mrs. Hudson which he had taken during their marriage. Accompanying the nude photograph were a proposed caption regarding Mrs. Hudson's sexual preferences, to be published with the photograph, and an entry blank and model's release for publication in *Gallery* in the "Girl Next Door" Amateur Erotic Photo Contest. Mrs. Hudson's photograph was published in the October 1985 issue.

Montcalm apparently relied upon the entry blank submitted by Gordon in publishing the photo and caption. The entry blank and model's release stated that Gary Hudson was the photographer and that the enclosed photograph was of his lover Susan Grossen. It also gave Susan's age, occupation, and a purported address and telephone number. Neither Mr. nor Mrs. Hudson had in fact consented to the

publication or release. They first became aware of it when they saw the picture in *Gallery* on August 29, 1985. Gordon had falsely filled out the entry blank, including affixing a corporate seal to the document in lieu of the required notary public seal.

Two months after the Hudsons first saw the photograph in *Gallery* and after meetings with their attorney, they executed a "Release of All Claims" in the presence of the attorney. It was for and in consideration of Montcalm's production of the original entry blank and model's release.

On May 5, 1987, the Hudsons sued Montcalm and Gordon, alleging: Montcalm, acting under the auspices of *Gallery*, failed to investigate the truthfulness or veracity of the materials and failed to obtain their permission to publish, disclose or utilize the materials. Acting negligently and in reckless disregard for the consequences, Montcalm nonetheless published the photograph accompanied by a provocative caption. This was intended by defendants to be seen and read by thousands if not millions of readers of *Gallery*. The publication invaded the Hudsons' privacy, held them out in a false light in the public eye and among their friends, family and acquaintances, subjected Mrs. Hudson to contempt, ridicule and humiliation, and was done to exploit for the commercial advantage of Montcalm private information concerning them without their knowledge or consent.

The suit also challenged the executed release of claims against Montcalm on the basis that the document lacked legal consideration and was void as unconscionable due to the actions described and was obtained without the intent of plaintiffs to release their claims against Montcalm and when they were distraught as a result of defendants' acts.

The Hudsons prayed for legal and equitable relief setting aside the release and for damages pursuant to OCGA § 51-12-6.

Montcalm moved for dismissal, or alternatively for summary judgment on the release. Gordon sought summary judgment, claiming that the suit was time-barred under OCGA § 9-3-33 because it was not brought within one year after the cause of action accrued.

In two separate detailed orders, the court granted summary judgment to Montcalm because of the release and denied it to Gordon. It concluded that the filing of suit approximately one year and eight months after plaintiffs' cause of action arose was timely because it involved, at least in part, injury to the person so that the two-year rather than one-year limitation in OCGA § 9-3-33 governed.

## Case No. 77887

The Hudsons contend there is evidence which would permit findings that the release was obtained by fraud and also that it resulted

from unequal bargaining power of the parties and inadequacy of consideration.

1. Appellants maintain that because Gordon testified that he left the notary public signature line blank when he mailed the entry form directly to Montcalm, and because the original form given to them by Montcalm contained a signature in the notary public space, supposedly verifying the information in the form, the inference arises that the signature was placed while the form was in Montcalm's possession and custody. They argue that such inference, if accepted by the jury, gives rise to exactly that kind of fraud, artifice or trick which would render the release unenforceable.

The trial court's analysis of this contention is correct. Even if the alleged inference is made, the evidence would not permit the Hudsons to skirt the release. "Fraud which constitutes a ground for voiding the contract under [OCGA § 13-5-5] must be fraud which induced the parties to enter the contract. [Cits.]" *Gilreath v. Argo*, 135 Ga. App. 849, 851 (3) (219 SE2d 461) (1975). The alleged fraud is not in the inducement to sign the release but rather is related to the signature on the entry form. There is no evidence that they relied on its validity in executing the release.

It is true that "[c]oncealment of material facts may in itself amount to fraud, where direct inquiry is made and the truth evaded." *Neely v. Oliver Farm Equip. Sales Co.*, 52 Ga. App. 166, 167 (1) (182 SE 630) (1935). But there is no evidence that the Hudsons made any inquiry about the questioned signature prior to signing the release. In any event, their lack of awareness of a problem with the signature, for whatever reason, does not affect the enforceability of the release. Plaintiffs have not sued Montcalm for this alleged fraud, nor amended their complaint to include such a cause of action, nor sought to set aside the release on this ground in the complaint. See *Chrysler Corp. v. Marinari*, 182 Ga. App. 399, 400 (2) (355 SE2d 719) (1987) as to fraud elements.

The release encompassed "all claims for relief and causes of action which may now or in the future be asserted in any civil action filed by Susan (Grossen) Hudson and/or Gary Hudson against Montcalm Publishing Corporation (Gallery Magazine) in any court of law in or of the United States." It released and forever discharged Montcalm "from any and all causes of action and claims for relief of any nature whatsoever, known and unknown, anticipated and unanticipated, past, present and future, for any and all personal injuries, property damage or otherwise, including all consequential and derivative damages, resulting or to result from or in any way growing out of the publication" of Mrs. Hudson's photograph.

Prior to signing, the Hudsons were aware of the publication of the nude photograph based upon the bogus entry blank, and they

chose to execute the comprehensive release in favor of Montcalm in order to obtain evidence as to how the publication came about and take legal action accordingly. Consequently, their unpled claim of fraud against Montcalm so as to avoid the release fails.

2. Appellants contend that the release is unenforceable due to inequity in bargaining power because at the time of execution Mrs. Hudson was distraught over the publication and both of them were under enormous stress, shock and humiliation, especially in the context of Gordon's vendetta against them. They claim that they understood that the release would simply effect a disclosure of information and not release all their claims against Montcalm.

The record does not support such contentions. The release was not executed until two months after the Hudsons became aware of the publication. Mrs. Hudson was not under any medical treatment between the date she became aware of the *Gallery* publication and the date the release was signed. Before signing, the Hudsons met with their attorney on several occasions, and Mrs. Hudson also had telephone conversations with him.

The attorney informed Mrs. Hudson that he had contacted *Gallery* in an attempt to obtain the original entry blank submitted by Gordon and that the only way to get it was to sign a release. Mrs. Hudson responded that if that was the way they had to get the entry blank, that was the way they had to do it. The original form was obtained by this trade.

The Hudsons expressed no dissatisfaction with their attorney's representation. The release was signed and notarized in his office after the Hudsons read it. The attorney was present when the release was executed, and he initialed it and signed it as approved. It concluded: "The undersigned further states that they have fully read the foregoing release in its entirety, and that they have been fully advised by their attorney, . . . , with respect to its legal effect and that he knows and understands the contents of this document and signs it as his own free act."

There is no evidence of great disparity of mental ability or otherwise in contracting the bargain. See OCGA § 23-2-2. Compare *Southern R. v. Lawson*, 256 Ga. 798, 799 (1) (a) (353 SE2d 491) (1987).

3. Appellants contend inadequacy of consideration for the release.

"[T]he time at which the existence and adequacy of consideration is determined is the time of contracting. [Cit.]" *Breedlove v. Hurst*, 181 Ga. App. 4, 5 (1) (351 SE2d 212) (1986). The Hudsons wanted to obtain the original document in order to subject it to handwriting and fingerprint specialists and thus they entered into the bargain and received the document for use in taking action against Gordon.

A release may be gratuitous or given for an inadequate consideration. *Philips Audio &c. Corp. v. Bateman*, 160 Ga. App. 12, 14 (285 SE2d 747) (1981). The Hudsons did receive valuable consideration for the release.

The evidence on summary judgment did not raise a material issue of disputed fact, OCGA § 9-11-56, as to the validity and enforceability of the release. It was a complete defense for Montcalm. OCGA § 13-5-7.

### Case No. 77888

Gordon contends that the trial court erred in denying summary judgment to him because the invasion of privacy claim seeks to protect reputation, so that the one-year statute of limitation in OCGA § 9-3-33 bars the Hudsons' suit.

The Hudsons' action did not expressly seek damages for injury to their reputation but rather to their persons. "The definition of the right of privacy as the term was used in *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (5) (50 SE 68, 69 LRA 101, 106 ASR 104, 2 AC 561) and as it is generally considered in the cases dealing with the subject, is one that deals with the person as a *person*, his mental proclivities and emotional reactions. 'It is, simply stated, the right to be let alone; to live one's life as one chooses, free from assault, intrusion or invasion except as they can be justified by the clear needs of community living under a government of law.' [Cit.] So considered, . . . 'it is an incident of the person, and not of property.' " *McQueen v. Wilson*, 117 Ga. App. 488, 490 (2) (161 SE2d 63) (1968), rev'd on other grounds, *Wilson v. McQueen*, 224 Ga. 420 (162 SE2d 313) (1968).

In *Jones v. Hudgins*, 163 Ga. App. 793, 794 (1) (295 SE2d 119) (1982), this court cited as persuasive a decision of the Pennsylvania Superior Court on the issue of what statute of limitation should be applied in a right to privacy action for appropriation of a picture. "In applying the statute of limitation for injury to the person, the [Pennsylvania] court said: 'It has been said: "The gravamen of the action . . . is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication . . .

"Since, under the law, recovery may be had for an invasion of the right of privacy for injured feelings alone, the wrongs redressed must be considered as a direct rather than an indirect injury and one that is wholly personal in character, not depending on any effect which the publication may have on the standing of the individual in the community. It seems to us that the mind of the individual, his feelings and mental processes, are as much a part of his person as his observable physical members. An injury, therefore, which affects the sensibilities

is equally an injury to the person as an injury to the body would be. In that respect a cause of action for the violation of the right of privacy, causing mental suffering to the plaintiff, is an injury to the person." [Cits.]' *Hull v. Curtis Publishing Co.*, 182 Pa. Super. 86 (1), 97 (125 A2d 644 (3))."

While the tort of invasion of privacy may well involve injury to one's reputation, the claimed invasion allegedly injured the plaintiffs' personal sensibilities and mental repose aside from the grief occasioned by others' opinion of them following the publication. See *Cabaniss v. Hipsley*, 114 Ga. App. 367 (151 SE2d 496) (1966) for a discussion of the potential interests affected in invasion of privacy claims.

The two-year statute of limitation in OCGA § 9-3-33 for injury to the person applied, precluding summary judgment to Gordon as to timeliness of the suit.

*Judgment affirmed in Case No. 77887. Judgment affirmed in Case No. 77888. Banke, P. J., and Birdsong, J., concur.*

DECIDED FEBRUARY 21, 1989 —
REHEARING DENIED MARCH 8, 1989 — ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Bennett, Williams & Henry, Michael T. Bennett, Morrison & McCormick, R. Jeffrey Morrison*, for Hudson.

*Goodman & Bush, James E. Goodman, F. Clay Bush*, for Montcalm.

*Awtrey & Parker, J. Lynn Rainey*, for Gordon.