Stan **MAPLES**, Plaintiff,

v.

**NATIONAL ENQUIRER**, Defendant.

Civ. A. No. 4:90–cv–167–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Oct. 2, 1990.

Daniel S. Reinhardt, Robert L. Pennington, Scott A. Farrow, Troutman Sanders Lockerman & Ashmore, Atlanta, Ga., for plaintiff.

Robert Maddox Brinson, Brinson Askew & Berry, Rome, Ga., Paul Martin Wolff, Gerson A. Zweifach, Nicole K. Seligman, Diana L. Schacht, Williams & Connolly, Washington, D.C., pro hac vice, for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Defendant's Motions to Dismiss Plaintiff's Complaint and to stay Discovery Pending Resolution of the Motion to Dismiss, and also Plaintiff's Motion to Compel Discovery, and for Attorney's Fees incurred in connection with his Motion to Compel. The Defendant's Motion to Dismiss will be discussed first and the discovery disputes second.

### I. *Facts*

In February 1990 stories began appearing in the popular press that Donald and Ivana Trump planned to divorce. Many of the stories cited a relationship between Donald Trump and Marla Maples as one of the reasons for the breakup of the Trump marriage. According to Plaintiff's statement of facts, hundreds of reporters soon poured into the North Georgia region seeking information about Marla *Maples. In* addition to "hounding" Ms. Maples, the at-

tention of the reporters was focused on Marla's Father, Stan Maples. Stan Maples is the Plaintiff in this action.

Mr. Maples was contacted on a number of occasions by the Defendant, National Enquirer, and asked to comment on his daughter's relationship with Donald Trump. Defendant attempted to arrange an interview with Mr. Maples. According to Plaintiff's account of the facts, no agreement as to an interview was reached, nor was any interview held.

This case deals with an article published in the April 10, 1990 edition of the Defendant's publication, the National Enquirer. The Cover of the April 10, 1990 edition featured the headline "Marla's Angry Dad Warns: TRUMP MISTRESS CLOSE TO SUICIDE." Printed beside a close up photograph of Donald Trump's face were the words "He threatens to punch out Donald for dumping her." On page 2 of the publication the Defendant printed what was billed as an "exclusive interview" with Stan Maples. Included within the interview were the following statements:

> Distraught over being dumped like a sack of rotten potatoes, Donald Trump's mistress Marla Maples has plunged into such a black depression that she's suicidal, says her worried and furious father. "Marla is emotionally shattered. She gave Trump her complete trust and he betrayed her," fumed dad Stan Maples in an exclusive interview."
>
> "now she realizes she's been made a fool of—and she's so depressed she's close to suicide. I'm mad as hell. I'm at the point where I'm ready to march into Donald's office and punch him in the nose!"
>
> As the ENQUIRER revealed March 6, Trump first dumped his mistress in mid-February. But he'd barely hung up the phone on Marla when he secretly began seeing her again, says her dad.
>
> "Donald had promised to marry her and make her queen of the Trump empire. When he told her it was over the first time, she was so devastated that Donald feared she might come out with the inside story of what he'd done to her," Marla's father confided.

"So he tried to patch things up."

.　　　.　　　.　　　.　　　.

But meanwhile, Stan Maples says his daughter is "miserable."

"Now I can see the real Donald Trump. He only cares about one person in the whole world—Donald Trump."

On June 29, 1990 Stan Maples filed his complaint against Defendant alleging libel, commercial appropriation and false light invasion of privacy. With the complaint Maples also filed his First Request for the Production of Documents and his first Interrogatories to Defendant National Enquirer. Defendant was granted two extensions of time by Plaintiff to respond to the complaint. On August 15, 1990 Defendant filed its Motion to Dismiss but did not otherwise respond to the complaint. Five days later Defendant filed a Motion to Stay all Discovery pending resolution of the Motion to Dismiss. On September 7, 1990 Plaintiff filed a Motion to Compel Discovery against the Defendant. On this footing the case has arrived in this Court for decision.

## II. Defendant's Motion to Dismiss For Failure to State a Claim.

For the purposes of a motion under Rule 12(b)(6), the allegations of the complaint must be taken "at face value." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972). A motion to dismiss for failure to state a claim tests only the sufficiency of a complaint. *See, Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). It should not be granted "unless it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Plaintiff's complaint in this case alleges three causes of action arising out of Defendant's publication on April 10, 1990 of statements involving Plaintiff; libel, invasion of privacy-false light, and invasion of privacy-commercial appropriation. Defen-

dant contends that the allegations in Plaintiff's complaint are insufficient as a matter of law to make out any of the above causes of action and has asked this Court to dismiss Plaintiff's complaint.

### A. Libel

In Georgia, Newspaper Libel is "any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of the person and expose him to public hatred, contempt, or ridicule" O.C.G.A. 51–5–2.

Plaintiff alleges in his complaint that Defendant, through its April 10, 1990 publication, made false and malicious statements concerning Plaintiff, and also attributed statements to Plaintiff which were false and malicious. Plaintiff further alleges that these false statements and quotations injured and continue to injure the Plaintiff's reputation since they: 1) suggest Plaintiff is angry at, or having a feud with Donald Trump, 2) attribute derogatory statements concerning Donald Trump to Plaintiff, and 3) suggest that Plaintiff would make false, embarrassing statements concerning his daughter's mental health and personal life to a nationally published weekly tabloid.

Defendant argues that the Plaintiff's complaint is deficient because the statements in question do not defame the Plaintiff. According to the Defendant, the statements at issue do not concern the Plaintiff, they are not libelous per se, nor can they otherwise support a finding of defamation.

■ As Defendant correctly points out, to support a claim of libel, the words complained of must be "of and concerning" the Plaintiff. *Fiske v. Stockton*, 171 Ga. App. 601, 320 S.E.2d 590 (1984). This Court recognizes that words charged as defamatory must refer to some ascertained or ascertainable person and that person must be the plaintiff. *see, Ledger–Enquirer Co. v. Brown*, 214 Ga. 422, 105 S.E.2d 229 (1958). Defendant's argument suggests that because the statements at issue refer to Mr. Trump and Marla Maples and the demise of their rumored love affair, one of these individuals may have reason to complain, but not Plaintiff.

■ Although the Plaintiff was not the subject of the article, Plaintiff was cited as the source of most, if not all of the information contained in the article. Plaintiff's theory is that the article, by attributing false statements to him, portrays Plaintiff as a father who would sell intimate details of his daughter's life to a national publication for money.

Plaintiff's theory of libel by attribution is not new to Georgia. Plaintiff's complaint is closely analogous to that in *Stewart v. Swift Specific Co.*, 76 Ga. 280 (1885). In *Stewart*, an action for libel was based on an article published in a statewide newspaper which described how a woman, bitten by cat, had somehow taken on the characteristics of a cat. The Plaintiff in Stewart was the daughter of the woman who was the subject of the article. On Appeal, the Georgia Supreme Court reversed the trial Court's dismissal of plaintiff's complaint stating:

"If, then, a libel be that publication which tends to load with public contempt the person who is falsely charged with furnishing the matter voluntarily for print, and which tend to lower her reputation as a sensible, modest and dutiful daughter, because she furnished for publication such foolish and ridiculous conduct of her mother, then this publication is defamatory and libelous of this plaintiff, and she has the right to go before a jury upon the complaint she makes of its falsehood." *Id.* at 284–85.

Similarly, in the case at bar, Plaintiff claims that he was libeled by the statements attributed to him about his daughter. These statements could be considered to lower Plaintiff's reputation as a dutiful father since they portray him as furnishing the intimate details of his daughter's grief for publication in a national tabloid. Based on the reasoning in *Stewart*, this Court cannot say as a matter of law that such statements cannot form the basis of a libel complaint.

■ Defendant's next argument is that the statements published by Defendant are not libelous *per se*.[1] Although there is an evidentiary distinction under Georgia law between Libel *per se* and libel *per quod*, there is nothing in that distinction which would counsel the dismissal of Plaintiff's complaint. "A libelous charge is actionable per se, whether the words directly or indirectly, by intimation or innuendo contain libel." *Brandon v. Arkansas Fuel Oil Co.*, 64 Ga.App. 139, 12 S.E.2d 414 (1940); *Southland Corp. v. Garren*, 138 Ga.App. 246, 225 S.E.2d 920 (1976), *rev'd on other grounds*, 237 Ga. 484, 228 S.E.2d 870 (1976).

■ Lastly Defendant asks the Court to dismiss Plaintiff's complaint based on one of several factual based arguments that the article simply doesn't defame the Plaintiff.[2] Under Georgia law, however, where an article may be ascribed more than one meaning, one of which would be libelous and actionable and the other not, it is for the jury to say which meaning will be attributed to it by a reader. *Reece v. Grissom*, 154 Ga.App. 194, 267 S.E.2d 839 (1980); *Macon Telegraph Publishing Co. v. Elliott*, 165 Ga.App. 719, 302 S.E.2d 692 (1983). Accordingly, taking the plain meaning of the language of the article, we cannot say as a matter of law it is not defamatory.

### B. Invasion of Privacy—False Light

Count One of Plaintiff's complaint alleges that the statements published by Defendant are false and place Plaintiff in a false light in the public eye, thereby constituting an invasion of his privacy.

Defendant's arguments to dismiss Count One of Plaintiff's complaint are centered around the element of the false light tort which require the alleged falsity to be "highly offensive to a reasonable person." *See, Thomason v. Times Journal, Inc.*, 190 Ga.App. 601, 379 S.E.2d 551 (1989). Defendant claims that the Plaintiff has failed to plead this necessary element of the tort, and that even if properly pleaded, the statements attributed to the Plaintiff would not be highly offensive to a reasonable person.

■ First of all, in the eyes of this Court, the alleged pleading defect in Plaintiff's complaint is nugatory. Under the Federal Rules of Civil Procedure all that is required is "a short plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Fed.R.Civ.P. 8. Plaintiff's complaint meets this standard by identifying the claims asserted and facts sufficient to support those claims.

Defendant's second argument asks this Court to dismiss Plaintiff's claim since the allegedly false statements are not, as a matter of law, "highly offensive to a person of reasonable sensibilities."

■ The Restatement (Second) of Torts has explained the "highly offensive" element of the false light tort as requiring that a false statement, "while not necessarily defamatory in a strict sense, [must] at least be highly offensive to a reasonable person if shown in the same light." Annotation, *False Light–Elements*, 57 A.L.R.4th 22, 161 (1987). Georgia Courts have adopted this approach, recognizing a right of privacy that must be protected but also balancing that right against the rights of others. See, *Thomason v. Times–Journal, Inc.*, 190 Ga.App. 601, 379 S.E.2d 551 (1989). Under Georgia law, "the hypersensitive individual will not be protected," *Id*,

---

1. Defendant does not indicate what the goal of this argument is, however the Court assumes that the Defendant, on this Motion to Dismiss, is seeking to prove the Plaintiff's complaint deficient since because it alleges only libel *per quod* instead of libel *per se*, extrinsic facts must indicate the libelous nature of the statements. *See, Macon Telegraph Publishing Co. v. Elliot*, 165 Ga.App. 719, 302 S.E.2d 692 (1983). Whatever the Defendant's unstated motive, based on the

authority cited above this Court need not decide the issue at this time.

2. Defendant argues that for a father to react unfavorably to a perceived mistreatment of his daughter is neither blameworthy nor unexpected, and that it is only natural for a father to defend his daughter in the same forum in which her reputation had been tarnished.

at 604. *See also,* Prosser & Keeton, On Torts (5th Ed.), at 864. Georgia Courts have not hesitated to dismiss an action for false light invasion of privacy where the statements at issue clearly are not offensive and objectionable to a reasonable person of ordinary sensibilities. *See, Thomason, supra,* (false obituary, retracted the next day, held not highly offensive); *Brown v. Colonial Stores,* 110 Ga.App. 154, 138 S.E.2d 62 (1964) (treatment of customer questioned in public about a returned check is not sufficiently offensive for liability); *Davis v. General Finance & Thrift Co.,* 80 Ga.App. 708, 57 S.E.2d 225 (1950) (receipt of mistaken debt collection telegram held not highly offensive).

■ In the case at bar, however, it seems clear that such a dismissal is unwarranted. Plaintiff argues that the statements attributed to him by the Defendant, by their lack of any truth, are highly offensive to any reasonable person. According to Plaintiff's argument, anyone who knows the true facts and reads the report attributed to Plaintiff by Defendant's publication, would consider Plaintiff a liar. Plaintiff argues this imputation alone is sufficiently offensive to constitute the "highly offensive" element of false light invasion of privacy.

There is case support for this contention in Georgia law. In *Pavesich v. New England Life Insurance Co.,* 122 Ga. 190, 50 S.E. 68 (1904), the Georgia Supreme Court upheld a right of action for false light invasion of privacy where an insurance company had published an advertisement which identified the plaintiff as the satisfied owner of one of its insurance policies. Plaintiff alleged in his complaint that he had never owned nor enjoyed any benefit of the defendant company's policies. In discussing the "highly offensive" element of false light invasion of privacy the Court stated in part,

In light of these allegations, the words attributed to the plaintiff become absolutely false, and those who are acquainted with the facts, upon reading the statement, would naturally ask, for what purpose was this falsehood written? ... [t]he person to whom the words were attributed would become contemptible in the mind of the reader. He would become at once a self confessed liar. *Id,* at 221, 50 S.E. 68.

The factual similarity between the case at bar and *Pavesich* is clear. In both cases false statements were attributed to the Plaintiff, and in both cases the Plaintiff could be considered, by those who know the truth, "a self confessed liar."

Defendant's submissions to this Court have detailed a number of situations in which Federal Courts, applying the laws of jurisdictions other than Georgia, have considered various publications not to be "highly offensive." [3] This Court is not persuaded by such authority to dismiss Plaintiff's complaint as a matter of Georgia law.

Defendant also argues that the mere association of Plaintiff's name with that of the National Enquirer is insufficient as a matter of law to place Plaintiff in a false light highly offensive to the community. Whatever the propriety of this argument, it addresses a point the Plaintiff has yet to raise.

Defendant's final argument against the false light invasion of privacy claim is that such a claim is duplicative of the defamation claim and should be dismissed. Defendant argues that Plaintiff should not be able to circumvent the limits on defamation actions by relabeling their claim under the rubric of privacy.

■ Although Georgia Courts have held that matters absolutely privileged as to a libel claim cannot form the basis of a privacy claim, *Rothstein v. L.F. Still &*

---

**3.** *Virgil v. Sports Illustrated,* 424 F.Supp. 1286 (S.D.Cal.1976) (description of plaintiff as putting out cigarettes in his mouth, and eating insects, while embarrassing, is not highly offensive); *Fudge v. Penthouse International,* 840 F.2d 1012 (1st Cir.) *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988) (article in men's magazine which described some girls anger at being separated from their male schoolmates at recess and which implied that the girls sought to dominate their male classmates held unobjectionable under the applicable Rhode Island statute). *Sidis v. F.R. Publishing Corp.,* 113 F.2d 806 (2d Cir.), *cert. denied,* 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 (1940) (uncomplimentary portrait of former child prodigy as living in an untidy room and having a curious laugh held unobjectionable).

*Co.*, 181 Ga.App. 113, 351 S.E.2d 513 (1986), Georgia Courts still recognize the two actions as distinct claims, *see, Thomason v. Times–Journal Inc.*, supra, protecting different interests, *see, Hudson v. Montcalm Pub. Corp.*, 190 Ga.App. 629, 379 S.E.2d 572 (1989). Hence, until Defendant can demonstrate how Plaintiff seeks to circumvent some limitation on a libel action by means of this false light claim, this Court sees no impropriety in Plaintiff's assertation of both claims. *See,* Fed.R.Civ.P. 8(e)(2), 18(a).

C. Invasion of Privacy—Commercial Appropriation

Plaintiff alleges that Defendant's report of false information under the guise of an "exclusive" interview constitutes a commercial appropriation of Plaintiff's name, likeness and story. Defendant seeks dismissal of this claim since Plaintiff's name and story were not appropriated by Defendant as a commercial advertisement or product endorsement and because the information reported was newsworthy and hence protected by the First Amendment to the U.S. Constitution.

■ Under Georgia Law, commercial appropriation is the "appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness." *Cabaniss v. Hipsley*, 114 Ga.App. 367, 377, 151 S.E.2d 496 (1966). Defendant, through its submissions to this Court, attempts to limit this definition to situations involving the unauthorized use of an individual's name or likeness in commercial advertisements and/or product endorsements. Defendant argues that because Plaintiff has not shown himself associated with some commercial product other than the publication itself, he has failed to make out a claim for commercial appropriation.

This Court, however, does not agree that commercial appropriation under Georgia law is so limited. For example in *Cabaniss*, supra, the Georgia Court of Appeals found that no liability under a commercial appropriation theory could be imposed on a magazine publisher whose publication had merely run an ad which falsely depicted the plaintiff. However in explaining that lack of liability the Court added, "a different

question might be presented had the evidence shown that [defendant] used the advertisement of the Atlanta Playboy Club, with its photograph of plaintiff, to publicize or advertise *his magazine*." *Cabaniss*, 114 Ga.App., at 381, 151 S.E.2d 496, (emphasis in original).

■ In the case at bar, Plaintiff's name and story were featured prominently on the cover of Defendant's publication. There can be little doubt that the cover of Defendant's publication is designed to maximize the publication's appeal to the public. Hence, in a very real sense, Plaintiff's likeness and story could be considered used by Defendant as publicity or advertising for Defendant's publication itself.

■ Defendant also argues that the use of Plaintiff's name and likeness in association with a "news" article cannot constitute commercial appropriation since "news" is protected by the First Amendment to the U.S. Constitution. Defendant is correct that "where an incident is a matter of public interest, or the subject of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy." *Waters v. Fleetwood*, 212 Ga. 161, 91 S.E.2d 344 (1956). A factually accurate public disclosure is not tortious when connected with a newsworthy event. *Neff v. Time, Inc.*, 406 F.Supp. 858 (W.D.Pa.1976). *Jenkins v. Dell Publishing Co.*, 251 F.2d 447 (3d Cir. 1958).

Nonetheless, to fit within the zone of protection afforded "news", an account must be factually accurate. Taking the allegations of Planitiff's complaint as true, we are bound to consider Defendant's reported statements false. Therefore the protection afforded news is not available to Defendant; at least at this stage of the litigation. Consequently, Plaintiff's claim for commercial appropriation cannot be dismissed as a matter of law.

III. *Discovery Disputes*

In light of the fact that the Defendant's Motion to Dismiss has been denied, the Defendant's Motion to Stay Discovery pending resolution of the Motion to Dismiss is similarly denied.

**1144**

Plaintiff has moved this Court to compel the Defendant to respond to his First Requests for Documents and First Interrogatories. The Court notes that Local Rule 225-4 has not been complied with in that no good faith conference to resolve discovery disputes was held. Hence Plaintiff's Motion to Compel is denied without prejudice. Defendant is instructed to respond to Plaintiff's discovery requests within ten days of this order. If Plaintiff does not receive adequate responses within that period he may move for reconsideration of his Motion to Compel. Plaintiff's Motion for Attorney's Fees in connection with the above motion is denied as without merit.

### IV. *Conclusion*

Accordingly, for the reasons stated herein, Defendant's Motion to Dismiss the Complaint and Defendant's Motion to Stay Discovery are DENIED. Plaintiff's Motion to Compel Discovery is DENIED without prejudice, and Plaintiff's Motion for Attorney's Fees is DENIED.

IT IS SO ORDERED.